```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


WINDSTAR HOLDINGS LLC,

          Plaintiff,

v.                        //    CIVIL ACTION NO. 1:10CV204
                                       (Judge Keeley)

RANGE RESOURCES CORPORATION,
RANGE RESOURCES - APPALACHIA, LLC,
M.W. GARY & ASSOCIATES, LLC, and
ADAM G. YOUNG,

          Defendants.
```

### MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTIONS TO DISMISS (DKTS. 17, 19)

Related defendants Range Resources Corporation and Range Resources - Appalachia, LLC (collectively, "Range"), and defendant M.W. Gary & Associates, LLC ("Gary"), each have moved to dismiss the complaint filed by the plaintiff, Windstar Holdings LLC ("Windstar"). The motions allege that Windstar's complaint fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** both motions.

### I. FACTUAL BACKGROUND

The factual and legal issues raised in this case closely mirror those discussed in the Court's recent opinion in <u>Backwater Properties v. Range Resources Appalachia</u>, Civ. Action No. 1:10CV103

**WINDSTAR HOLDINGS LLC v. RANGE RESOURCES, ET AL.     1:10CV204**

**MEMORANDUM OPINION AND ORDER**

(N.D.W. Va. May 5, 2011)(Memorandum Opinion and Order, dkt. 71).[1] In Backwater, the Court held that language in lease documents provided to the plaintiffs in that case, in combination with alleged oral statements by Range's agents, precluded dismissal of claims for breach of contract, fraud, tortious interference, and unjust enrichment. The Court, however, did grant Range's motion to dismiss claims based on violations of federal and state antitrust laws. Some, but not all, of the claims asserted in this case parallel those in Backwater.[2]

As in Backwater, the plaintiff here alleges that, pursuant to an "Exclusionary Scheme" (the so-called "Bid Rigging Plan" in Backwater), Range enticed owners of natural gas rights in the Marcellus shale formation to sign lucrative, above-market-value leases of their gas reserves. According to Windstar, Range and its agents led it to believe it had binding contracts, subject only to confirmation of title. On information and belief, it alleges that Range in fact never intended to honor the agreements unless

---

[1] Unlike Backwater, this case is not a putative class action.

[2] Additionally, the Court recently granted Range's motion to dismiss in Kerns v. Range Resources, Civ. Action No. 1:10CV23 (N.D.W. Va., Jan. 18, 2011)(Memorandum Opinion and Order, dkt. 34). The causes of action in Kerns differed significantly from those set forth in Backwater and this case, although the factual allegations were somewhat similar.

subsequent market conditions made doing so profitable. Windstar surmises that Range sought to prevent other gas companies from signing contracts with it, and succeeded by causing Windstar to turn down other offers to lease its gas rights at rates lower than those offered by Range.

Windstar originally filed this case in the Circuit Court of Monongalia County, West Virginia. Range filed a timely notice of removal based on diversity. The complaint sets forth the following narrative with regard to Windstar's dealings with Range and its agents:

• In early 2008, Range, along with its land company, Gary, began soliciting leases in northern West Virginia as well as in Pennsylvania. Defendant Adam Young[3] served as a "landman" or leasing agent for Range and Gary;

• The defendants formulated a scheme whereby they would entice gas owners into signing leases at above-market rates, with the intent only to honor the leases if future market conditions made them profitable. This had the effect of "locking up" the gas rights, essentially giving Range an option to buy. These proposals

---

[3]Windstar has not perfected service on Young, nor has he entered an appearance in this case.

offered large per-acre signing bonuses, and production royalties significantly above the industry standard 1/8 (12.5%);

- In August and September of 2008, Young contacted Windstar, through its sole member R. Scott Summers ("Summers"), to solicit a gas lease. Young represented himself to be a Range employee. He also made the following representations, among others, to Summers: Range would pay Windstar a royalty rate of 18.5% of the value of all gas produced, plus $2,500 per acre as a signing bonus; the lease was pre-approved, only contingent upon certification of title; and "time was of the essence." He later increased the signing bonus to $2,850 per acre and stated that Range would lease the rights on those terms if Windstar signed within a month.

Along with the lease, Young presented Windstar with a "Dear Property Owner" letter ("DPO letter")(Windstar calls this the "Bonus Contract"), which stated that Windstar would receive an additional bonus payment as consideration for signing the lease. Young represented that the lease contract was binding as soon as Summers signed, that the lease language requiring Range's management approval process was a mere formality, and that Windstar would receive the bonus payment once a title check was completed;

- Summers, on behalf of Windstar, signed the lease on September 11, 2008, and returned it to Young. Summers then signed the DPO letter;

- Both before and after signing the Range lease and DPO letter, Windstar turned down other offers from competing potential lessees, with signing bonuses and royalties less than Range offered;

- On November 11, 2008, Range sent the lease back to Windstar, unsigned and stamped "VOID." Attached was a letter stating that the lease was not approved by Range management, but offering an alternative on slightly less favorable terms to Windstar (providing for the same total compensation, but the bonus would be spaced out over five years instead of paid immediately). The letter stated that the proposal would remain open until December 31, 2008;

- Summers contacted Young, who made further representations, including that the lease was contingent only on a title search and that the first installment of the bonus payment would be made in early January of 2009 if Windstar agreed to the new proposal;

- Summers agreed, and signed the new proposal. Young confirmed that Windstar had been "marked down" for a "2009 lease." He also stated in person that "the money is coming;"

- Windstar never received any payment, and, after several inquiries, Range informed Summers in May 2009 that the lease was

"under management review." In June 2009, Range stated that it had stopped leasing in West Virginia and would not pursue a lease with Windstar; and

• Because of the drop in gas prices during the time it believed it had a binding contract with Range, Windstar was unable to lease its gas rights to another company at any price.

## II. ANALYSIS

Windstar asserts seven causes of action, all of which Range and Gary argue fail to state a claim. In the context of a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations of the complaint as true, but need not accept the plaintiff's legal conclusions. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). With this standard in mind, the Court addresses in turn each cause of action as pled in the complaint.

### A. Count One - Breach of Contract

This count is alleged only against the Range defendants, who argue that the proposed lease and DPO letter were not offers but merely an invitation to bargain. In Range's view, Summers's signature merely constituted an offer by Windstar, which Range could accept or reject at its discretion. The lease itself stated that it was subject to approval by Range's management.

As this Court ruled in <u>Backwater</u>, however, Range's argument fails on a motion to dismiss because, at a minimum, when combined with the written documents, Young's statement that management approval was a mere formality creates a plausible claim that Windstar and Range had enforceable contracts for both the bonus payment set forth in the DPO letter and compensation due under the lease. Also, as discussed below, because the plaintiff has adequately pleaded a case for fraud, these oral representations place the contract outside the statute of frauds. The Court therefore **DENIES** Range's motion to dismiss with respect to Count One.

### B. Count Two - Specific Performance

Although pled as a separate count, the relief sought in Count Two – compelling Range to perform under the lease – is not an independent cause of action, but merely a possible remedy should Windstar ultimately establish the existence of a contract and a breach by Range. Contrary to the argument advanced by Range both in <u>Backwater</u> and here, the West Virginia Supreme Court of Appeals has recognized the possibility of ordering specific performance under a mineral lease. See <u>Blair v. Dickinson</u>, 54 S.E.2d 828 (1949). Thus, although the count does not state a separate cause of action, it would be inappropriate to prematurely limit the possibility of

the plaintiff's recovery of this remedy. Accordingly, the Court **DENIES** the defendants' motions to dismiss with respect to Count Two.

### C. Count Three - W. Va. Antitrust Act

Windstar alleges a cause of action for illegal restraint of trade under W. Va. Code § 47-18-3. As a matter of law, however, its claim fails because Range, Gary and Young were not competitors, but rather members of the same enterprise, and thus, as a matter of law, cannot combine or conspire in manner giving rise to antitrust liability.

In Princeton Ins. Agency, Inc. v. Erie Ins. Co., 690 S.E.2d 587, 593 (W. Va. 2009), the West Virginia Supreme Court of Appeals explicitly stated that, as directed by W. Va. Code § 47-18-16, it would "look to federal [antitrust] law to define what constitutes an unlawful restraint of trade." In that same case, the Court also held that the "legally distinct entities" requirement of federal law, which requires at least two separate economic actors to sustain an illegal combination or conspiracy, is applicable under the West Virginia Antitrust Act. Id. at 593 (quoting Oksanen v. Page Memorial Hospital, 945 F.2d 702, 702 (4th Cir. 1991).

Thus, because it is undisputed that M.W. Gary was an agent of Range, and Adam Young an agent of either or both of them, there can be no contract, conspiracy, or combination between any of them that would support a cause of action under the West Virginia Antitrust Act. Accordingly, the Court **GRANTS** the defendants' motions to dismiss Count Three.

### D. Count Four - Sherman Antitrust Act

Federal antitrust law also does not prohibit the concerted action of persons or entities engaged in the same overall enterprise. Oksanen, 945 F.2d at 703 (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984)). Thus, Windstar's Sherman Act allegations fail to state a claim as a matter of law, and the Court **GRANTS** the defendants' motions to dismiss Count Four of the complaint.

### E. Count Five - Fraud and Civil Conspiracy

Count Five contains two separate causes of action, one for fraud and one for civil conspiracy. While the former is adequately pled, the conspiracy claim fails as a matter of law for reasons similar to those that warranted dismissal of the state and federal antitrust allegations in Counts Three and Four.

The facts alleged in the complaint support an allegation of fraud under Rule 9 of the Federal Rules of Civil Procedure. "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)(quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).

It is not implausible to infer from the allegedly inflated offers, and the obfuscatory contract language in combination with Young's alleged statements, that Range and its agents intentionally misled Windstar into believing that a binding contract had been formed, although it never intended to carry out the contract unless later developments made doing so profitable.

The false statements element is satisfied by the various representations allegedly made by Mr. Young in late 2008 and early 2009, including that the lease would be valid depending only on a title search, and that the money was "on the way," or would be paid in early January 2009. Windstar states unequivocally that it relied on these statements to its detriment by not entertaining other offers both before and after it signed with Range.

Accepting the complaint's version of Mr. Young's statements as true, as the Court must on a motion to dismiss under Rule 12(b)(6), it was not unreasonable for Windstar to rely on those representations. Finally, Range allegedly gained a valuable option to lease the plaintiff's gas rights by virtue of its misleading statements. Thus, the Court **DENIES** the motion to dismiss with respect to the fraud claim set forth in Count Five.

Range and Gary correctly assert, however, that a corporation cannot conspire with its agents or employees. See <u>Ridgeway Coal Co., Inc. v. FMC Corp.</u>, 616 F.Supp. 404 (S.D.W. Va. 1985). As previously noted, at all relevant times, Gary and Young were agents or sub-agents of Range. Thus, the Court **GRANTS** the defendants' motion to dismiss the civil conspiracy cause of action contained in Count Five.

### F. Count Six - Negligent Misrepresentation

This claim survives because Windstar plausibly alleges that, when Young stated the lease was subject only to a title search, he knew or should have known that statement was false – that, in fact, Range intended to repudiate the lease unless it later determined that lease to be in its best interests. Alternatively, Range would

have known its true intentions and should have made them clear to its landmen to enable them to fairly deal with potential lessors.

The facts pled support a cause of action in tort. If Range did in fact intend to review each lease on an economic basis, it would be wrong for it to allow its agent, Young, to represent otherwise in negotiations with gas owners. If Young knew of the scheme, his failure to disclose it would, at a minimum, be negligent. Finally, as already stated, Windstar has adequately alleged that it relied on this misinformation and declined offers from other gas companies, to its economic detriment. Thus, the Court **DENIES** the motion to dismiss Count Six of the complaint.

**G. Count Seven - Tortious Interference with Prospective Contract**

Again, Windstar has sufficiently alleged that it received <u>bona fide</u> offers to lease its gas rights after signing with Range. Range argues that it did not commit any affirmative act to interfere with these offers, even if they were legitimately an expectancy. Windstar, however, convincingly argues that the "exclusionary scheme," and specifically the continuing misrepresentations of Range, Young, and Gary, interfered with its prospective contracts with other gas companies.

Had Range, sometime before the spring of 2009, unequivocally represented to Windstar that in fact there was no contract until

management approved the lease (that is, that Windstar's signature constituted only an offer, as Range now argues), Windstar would have been free to abandon that arrangement at any time and sign with another company. The facts as pled suggest that Range knew otherwise - that other companies would be making offers to owners of the Marcellus shale reserves, and, in an effort to prevent its competitors from doing business with the plaintiff, it intentionally misled Windstar into believing that the parties had a binding contract. Given the finding earlier in this opinion that Windstar has stated a claim for fraud based on Mr. Young's repeated reassurances, this claim survives as well, and the Court therefore **DENIES** the motions with respect to Count Seven.

## CONCLUSION

Windstar's claims of civil conspiracy and violations of state and federal antitrust statutes fail to state a claim as a matter of law, and must be dismissed under Rule 12(b)(6). Its remaining causes of action, however, are adequately pled and survive the defendant's motions at this time. In summary, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motions to dismiss filed by Gary (dkt. 17) and by Range (dkt. 19), with respect to each count of the complaint as follows:

**WINDSTAR HOLDINGS LLC v. RANGE RESOURCES, ET AL.       1:10CV204**

**MEMORANDUM OPINION AND ORDER**

- Count One: **DENIED.**

- Count Two: **DENIED.**

- Count Three: **GRANTED,** and Count Three of the complaint is **DISMISSED WITH PREJUDICE.**

- Count Four: **GRANTED,** and Count Four of the complaint is **DISMISSED WITH PREJUDICE.**

- Count Five: **DENIED** with respect to the claim of fraud; **GRANTED** with respect to civil conspiracy, and the claim of civil conspiracy is **DISMISSED WITH PREJUDICE.**

- Count Six: **DENIED.**

- Count Seven: **DENIED.**

    It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: July 12, 2011.

>    /s/ Irene M. Keeley
>    IRENE M. KEELEY
>    UNITED STATES DISTRICT JUDGE